ORLEANS,
April,
1834.

JOHN W. MASON *vs.* WM. HIDDEN and BROOKS GALE.

It was agreed between the owner of certain personal property and a portion of his creditors, that a third person, who then had possession of the property, should keep it till a certain day, and then sell it at auction, and divide the proceeds among the creditors, in a manner which rendered it uncertain whether all would be enabled to share. The person having possession of the property had notice of the arrangement, and agreed to execute it on his part. He employed one of said creditors to keep the property for him till the day of sale. Before that day arrived, another creditor attached and took away the property.

*Held,* that the contract operated as an assignment of the property for the benefit of the particular creditors, and was available against the after attachment of the other creditor. *Held* also, that said third person was the direct assignee, and might maintain trespass for such attachment.

This was trespass for two horses, and came into this court on exceptions taken by the defendants to the charge of the judge who presided at the jury trial.

The horses having been attached by the plaintiff, on several writs of attachment in favor of Davison & Hovey, and other creditors of the owner, Joseph H. Norris, and the plaintiff having the horses in his custody, an arrangement was entered into between the several parties aforesaid, by which the claim of Davison & Hovey was secured by a note executed to them by the father and brother of Norris, and it was agreed that the horses should remain in the plaintiff's possession till a certain day in the following week, and then be sold by him at auction for the benefit of said creditors; the avails to be applied, first to extinguish the demand of Davison & Hovey, for which the father and brother of Norris were thus accountable, and the balance to be paid to the other creditors, according to the order of their attachments. And thereupon most or all of said suits against Norris were stopped. The plaintiff consented to execute this arrangement on his part, and employed Davison, one of said creditors, to keep the horses for him till the day of sale. On the day previous to that appointed for the sale, the defendant, Gale, having notice of these facts, and being also a creditor of Norris, caused the horses to be attached at his suit by the defendant, Hidden, while thus in the keeping of Davison. For this taking the action was brought. The judge charged the jury, in effect, that upon the aforesaid facts, if they found them to exist, and that, without any purpose of deception or fraud towards other creditors, the plaintiff had a sufficient interest in, and possession of the horses, to sustain the action, and and would be entitled to recover their value. A verdict was accordingly returned for the plaintiff.

ORLEANS,
April,
1834.

Mason
vs.
Hidden & al.

The counsel for the defendant contended, as they had done at the trial—1. That the arrangement for the sale of the horses was unavailing against other creditors of Norris.—2. That the plaintiff acquired no such interest and possession under the arrangement, as would enable him to support trespass against an attaching creditor of Norris.—3. That he had not this at the time of the trespass complained of, having transferred the actual possession to Davison, whose right (being one of the creditors for whose benefit the sale was intended) was superior to his own. They cited 1 Sw. Dig. 530-1, and 539.—15 Peters. 82—12 Ib. 203. 1 Chit. Pl. 155.—3 Vt. R. 302.

For the plaintiff it was insisted, that the horses were legally pledged for the benefit of the sureties and first attaching creditors of Norris, who thereby acquired a lien which other creditors could not defeat.—That the plaintiff acted in their right, as agent, trustee, or auctioneer, and that Davison kept the horses as his servant. The counsel cited 1 Chit. Pl. 50, 154.—Paley on Agency, 282-4-5, 392.—Big. Dig. 110.

The opinion of the court was delivered by

ROYCE, J.—The contract under which the plaintiff was appointed to sell the horses, was, in substance, an assignment of the property, for the satisfaction of particular debts; and being founded on a legal and sufficient consideration, and accompanied with actual possession, was entitled to protection against the interference of other creditors. A question is made, whether the legal interest and right of possession under the contract vested in the plaintiff, or in the sureties and creditors of Norris, for whose benefit he was to act. But this question seems to be easily solved, when we consider the appropriate business of the plaintiff in carrying the contract into execution. He was the party appointed to keep and sell the horses, and make distribution of the proceeds. This was not a secondary authority, nor one derived from a portion of the contractors; it was original, grounded in the contract, and conferred by the concurrent act and agreement of all parties concerned, including Norris himself. And it was manifestly proper (though not legally indispensable) that the party charged with these important duties should be a third person, having no individual interest which might come in collision with those of the assignor or the creditors. On the other hand, the creditors were numerous, with

76

ORLEANS,
*April,*
1834.

Mason
*vs.*
Hidden & al.

distinct and uncertain interests. Some of them might never be entitled to share in the fruits of the assignment.

Under these circumstances, we think the plaintiff should be deemed the direct assignee, and as such, invested with the legal right of possession and sale. This disposes of the objection arising from the possession of Davison at the time of the trespass. He was apparently acting as a mere servant of the plaintiff, and if he had no paramount legal right, to which his possession became attached, it was the plaintiff's possession.

Judgment of the county court affirmed.

*Young, Hill, and J. Paddock,* for plaintiff.
*J. Cooper and Fletcher,* for defendants.