WILTON A. VIALL, EXR. OF CHARLES B. VIALL'S ESTATE, AND ADMR. OF CAROLINE N. VIALL'S ESTATE *v.* JAMES E. HURLEY AND FRANK J. HURLEY.

May Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 5, 1920.

*Equity Pleading—Bill to Reform Two Deeds to Same Grantees not Multifarious—When Joinder of Two Good Causes of Complaint not Multifarious—Reformation of Instruments —Bill Defective in Failing to Allege That Mistake Was Not Solely That of Plaintiff—Finding Beyond a Reasonable Doubt—Control of Boundary Lines—Construction of Deeds Question of Law—Location of Boundary Line Question of Fact—Dispute as to Location of Boundary Line Does not Authorize Equity Interference.*

1. Where plaintiff conveyed one piece of land as executor of one estate, and, as a part of the same transaction, but by separate deed, conveyed an adjoining piece to the same grantees as administrator of another estate, and, if there was a mistake in the description in one deed, there was a similar mistake in the description in the other deed, a bill brought by the plaintiff in his double capacity to reform the two deeds was not multifarious.

2. A bill is not to be deemed multifarious because it joins two good causes of complaint growing out of the same transaction, where all the defendants are interested in the same claim of right, and where the relief asked for in relation to each is of the same general character.

3. A bill to reform the description in deeds on the ground of mistake is fatally defective where there is no allegation showing that the mistake was other than one made solely by plaintiff's attorney in drawing the deeds, and through his negligence, and the negligence of plaintiff in executing them without looking them over or reading them, and without any fraud or other inequitable conduct on the part of the defendants.

4. A statement by the chancellor that, in making the findings, he had in mind the rule that mutual mistake must be established beyond a reasonable doubt, means that he observed the rule in making the findings.

5. Where the east boundary of lands conveyed is described as a line running from a specified point southerly along the west line of lands of the estate of V., 139 feet more or less, to lands of H., the course of the east line is controlled by the course of the west line of the lands of the estate mentioned, and its place of intersection is definitely fixed by the southwest corner of the lands of said estate.

6. In such case, where the next call is "thence running westerly * * * 175 feet more or less to South Street", the indefinite distance given is not to be considered in determining the point of intersection of the preceding call, and, as a part of the description of the south boundary of the land conveyed, is controlled by the permanent object named as the terminus of the line.

7. The constructions of deeds and their legal effect is a question of law; but the location of a boundary line on the land described in a deed is a question of fact to be determined on evidence.

8. The mere fact that the location of a boundary line is in controversy does not of itself authorize the interference of equity; and the parties will be left to their rights and remedies at law.

APPEAL IN CHANCERY. Bill for the reformation of two deeds. Heard on the bill, answer, and findings by the Chancellor at the June Term, 1919, Bennington County, *Butler,* Chancellor. Decree for the plaintiff. The defendants appealed. The opinion states the case.

*Holden & Healy* for the defendants.

Equity will withhold its aid if the mistake is the result of negligence or inattention. *N. Y. Life Ins. Co.* v. *Kimball,* 93 Vt. 147; *Bedell* v. *Wilder,* 65 Vt. 406; *Metcalf* v. *Metcalf,* 85 Me. 473; *Eldridge* v. *R. R. Co.,* 88 Me. 191; *Rice* v. *Dwight Mfg. Co.,* 2 Cush. (Mass.) 80; *Van Derventer* v. *Van Derventer,* 46 N. J. L. 460; *Upton* v. *Tribilock,* 91 U. S. 45, 23 L. ed. 203; *Fivey* v. *Pa. R. R.,* 67 N. J. L. 627, 91 A. S. R. 445; *Compton* v. *Beedle,* 83 Vt. 287; *Murrell* v. *Murrell,* 2 Strobhart's Eq. (S. C.) 148, 49 A. D. 664; *Kennerty* v. *Etiwan Phosphate Co.,* 21 S. C. 226, 53 A. R.. 669; *Grimes* v. *Sanders,* 93 U. S. 55, 23 L. ed. 801; Note, 65 A. S. R. 475; Note, 1 L. R. A. (N. S.) 785.

*Collins M. Graves* and *Henry Chase* for the plaintiff.

WATSON, C. J. This action is brought by the plaintiff in his double capacity as executor of the estate of Charles B. Viall, and as administrator of the estate of Caroline N. Viall, for the reformation of two certain deeds given by him: One in his representative capacity as executor, of a piece of land belonging to the former estate, and one in his representative capacity as administrator, of a piece of land belonging to the latter estate. For convenience, the former piece will be referred to hereinafter as A, and the latter piece as B. A and B adjoin, that is, the south line of A is the north line of B. The north line of A is the south line of Grandview Street, and the south line of B, the eastern portion, is the north line of land owned by one Hawks, and the western portion, is the north line of land owned by one Welch. Both A and B are bounded on the west by the east

line of South Street. The true location of the east line of both A and B, under the sale by the plaintiff to the defendants, is the question in dispute. The two pieces were thus sold together by the plaintiff, representing the two estates, in one transaction, but a separate deed was given for each because the ownership of each estate was independent of the ownership of the other, and of a different parcel of land. According to the allegations in the bill, if the location of the east boundary of land described in either deed was by mistake wrongly given, the east boundary of the land described in the other deed was by the same mistake wrongly given. Whether the boundary agreed upon be as stated in the two deeds, or as alleged in the bill, the line starts at the same point on the south line of Grandview Street, and runs southerly in a straight course to the land of Hawks, the point of intersection, in the later event, being some distance farther west. Defendant James E. Hurley demurred to the bill on grounds stated in six assignments, but really on two grounds: (1) That plaintiff has joined two separate and distinct estates or different interests, praying for different relief in each of the different capacities in which he sues for different, distinct, and independent causes; and (2) want of equity. The demurrer was overruled, and the benefit thereof reserved to the final hearing.

[1, 2]   As to the first ground, we think the case made by the bill falls within the rule that "a bill is not to be deemed multifarious, because it joins two good causes of complaint, growing out of the same transaction, where all the defendants are interested in the same claim of right, and where the relief asked for in relation to each is of the same general character." Story's Eq. Pl. § 284; *Varick* v. *Smith,* 5 Paige (N. Y.) 137, 28 A. D. 417; *Farrar, Burt & Co.* v. *Powell,* 71 Vt. 247, 44 Atl. 344; 10 R. C. L. 430, § 192. And this rule is not affected by the circumstance of the plaintiff claiming the same thing under distinct titles. 1 Dan. Ch. Pr. (2d Am. Ed.) *395.

[3]   But the second ground assigned presents a question of insurmountable difficulty. Assuming, but not deciding in this connection, that the allegations in the bill fairly show that the deeds, in the respect named, were not made in conformity with the east line of the two properties sold, as that line was pointed out on the ground by the agent and the attorney of the plaintiff, to the defendants, before the deeds were drawn, and that defendants purchased the properties with the knowledge and un-

derstanding that the east line thereof was as alleged and claimed by the plaintiff, yet there is no allegation showing that the mistake was other than one made solely by plaintiff's attorney in drawing the deeds, and through his negligence, and the negligence of the plaintiff in executing them without looking them over or reading them, and without any fraud or other inequitable conduct on the part of the defendants or either of them. In this respect the bill is fatally defective. *McDaniels* v. *Bank of Rutland,* 29 Vt. 230, 70 A. D. 406; *Bishop* v. *Allen,* 55 Vt. 423.

[4] It is objected that the record does not show the essential facts to have been found by the requisite degree of proof. The chancellor states that in making the findings he had in mind the rule that mutual mistakes must be established beyond a reasonable doubt. Obviously this means that he observed the rule.

The east line of the two parcels of land sold by the plaintiff to defendants is alleged in the bill to commence ''at a point in the south side of said Grandview Street one hundred seventy-five feet easterly from the east line of said South Street and running southerly to a point in the north line of said Hawk's land and southerly from the southwest corner of a henhouse then and now situated on the southerly part of the land belonging to the estate of said Caroline N. Viall, said point being one hundred sixty and two tenths feet easterly from the east line of said South Street.'' It is further alleged that this line was pointed out on the ground by plaintiff's agent and by plaintiff's attorney to the defendants before the deeds were executed as the east boundary of the land being sold to them; and that defendants purchased the property with the knowledge and understanding that said point referred to in the north line of Hawk's land and southerly from the southwest corner of the henhouse mentioned, was the southeast corner of the lands to be conveyed to them by the plaintiff; and that later, the deeds were delivered by plaintiff's attorney to defendants, with the understanding on the part of the latter, that the southeast corner was the point before shown them by said attorney, as stated above. The bill shows that by the deeds executed and delivered, the east boundary of land A is (beginning at the undisputed point on the south side of Grandview Street) ''thence running southerly along the west side of lands of the estate of said Charles B. Viall seventy-seven feet more or less;'' and the east boundary of land B is (beginning at the southeast corner of land A, as described,)

"thence running southerly in a straight line along the west line of lands of said estate sixty-two feet, more or less, to lands now owned by George M. Hawks." Thus by the description in the two deeds, the east line of the two parcels of land conveyed, is "along the west line of lands of the estate" of Charles B. Viall, in a straight course from the undisputed point of beginning in the south side of Grandview Street to the land owned by Hawks.

The answer of defendant Frank J. Hurley denies that the east line as alleged in the bill, was pointed out to defendants by the agent or the attorney of the plaintiff, as the east boundary of the properties being sold to defendants, and denies that defendants understood such alleged east line to be the east boundary of such properties; but on the contrary, avers that both the agent and the attorney of the plaintiff stated to defendants that the southeast corner of such property would be located in the north line of the Hawks land at a point one hundred and seventy-five feet easterly from the east line of South Street.

Many questions are raised by exceptions to rulings on the admissibility of evidence, and to findings made, as not warranted by the requisite degree of proof. But in the view we take of the case, it is not necessary to consider such exceptions.

[5, 6]   The defendants requested the chancellor, in effect, to find that the descriptions in the two deeds as drawn conform to the understanding of both defendants as to what they should be. Seemingly in response to such request the chancellor finds that "The land covered by the two deeds was bounded, pointed out and understood by the parties as in effect, on the west by South Street, on the north by Grandview Street in the village of Bennington, on the east by other lands of the estate of Charles B. Viall, and on the south by land of George M. Hawks and the land of N. J. Welch and wife." In legal effect the description in the two deeds amounts to just this, and nothing more. South Street and Grandview Street which bound the property on the west and north sides, respectively, are permanent objects. The north line of land A, running easterly from the east side of South Street, on the south side of Grandview Street 175 feet, terminates at the other lands belonging to the estate of Charles B. Viall. Here the distance exactly corresponds with the natural object, "other lands" mentioned, concerning which point there is no dispute. The east boundary of the two parcels deeded,

given together, is, thence running southerly "along the west line of lands of the estate of Charles B. Viall," one hundred and thirty-nine feet, more or less, to lands now owned by George M. Hawks. The course of this line is controlled by the course of the west line of the "lands of the estate," mentioned, meaning the same as though the deeds had bounded the land conveyed, east by other lands of the estate of Charles B. Viall. *Park* v. *Pratt*, 38 Vt. 545; *Vermont Marble Co.* v. *Eastman*, 91 Vt. 425, 101 Atl. 151. It will be noticed that the place of the intersection of this east line is thus definitely fixed by the southwest corner of the lands of the estate of Charles B. Viall. Running forward, the next call is, "thence running westerly along the north line of lands belonging to George M. Hawks and lands owned and occupied by M. J. Welch and wife one hundred seventy-five feet more or less to South Street." There is no uncertainty in the description, and the distance given in this call is not to be considered in locating the point of intersection of the preceding call. It is to be considered only as a part of the description of the south boundary of the land being conveyed; and, as such, the indefinite distance given is controlled by the permanent object named as the terminus of the line. *Vermont Marble Co.* v. *Eastman*, cited above.

[7] The construction of the deeds in question and their legal effect is a question of law; but the location of the east line on the land is a question of fact to be determined on evidence. *Lippett* v. *Kelley*, 46 Vt. 516; *Vermont Marble Co.* v. *Eastman*, cited above.

[8] The mere fact that the location of this boundary is in controversy does not of itself authorize the interference of equity; and the parties will be left to their rights and remedies at law. 3 Pom. Eq. § 1384; *Watkins* v. *Childs*, 80 Vt. 99, 66 Atl. 804, 11 Ann. Cas. 1123.

*Decree reversed and cause remanded with leave to the plaintiff to apply to amend this suit in equity into an action at law, for the purpose of locating on the ground the east line of the properties conveyed by the two deeds in question, said line being "along the west line of other lands of the estate of Charles B. Viall." Should such application not be made within a reasonable time, let the bill be dismissed. Let the defendants recover their costs in this equity suit.*